**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
MIAMI DIVISION
CASE NO. 1:26-cv-26215

**ZHONGSHAN JIALIZHI TECHNOLOGY CO., LTD.,**

Plaintiff,

v.

**THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"**

Defendants.

---

**DECLARATION OF [redacted] IN SUPPORT OF PLAINTIFF'S EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER**

I, [redacted], declare as follows:

1. I am the President of Plaintiff Zhongshan Jializhi Technology Co., Ltd. ("Zhongshan Jializhi" or the "Company"). I make this Declaration in support of the Company's Ex Parte Motion for a Temporary Restraining Order and related relief. I have personal knowledge of the facts stated here, and if called as a witness I could and would testify competently to them. As to matters stated on information and belief, I believe them to be true based on the Company's business records and my supervision of the Company's design, sales, and enforcement activities.

2. The Company designs, develops, manufactures, and sells decorative and seasonal lighting products for sale to consumers in the United States, including through the Amazon.com and Temu.com marketplaces.

3. I am the named inventor of United States Design Patent No. [redacted], titled "[redacted]," which issued on May 12, 2026 (the "[redacted] Patent"). I conceived the ornamental design claimed in the [redacted] Patent. The Company owns the entire right, title, and interest in the [redacted] Patent by assignment, including the right to enforce it and to recover for its infringement. A true and correct copy of the [redacted] Patent is attached to the Complaint as Exhibit 1.

4. The [redacted] Patent claims the ornamental design for a ghost light as shown in its seven figures. The design is decorative, not functional. Its overall appearance is defined by a distinctive combination of ornamental features: (a) a smoothly domed, draped "sheeted-ghost" body that tapers from a rounded crown to a flared skirt; (b) a lower hem that is scalloped, rising and falling in a series of rounded points rather than ending in a plain, straight edge; (c) a "face" formed by three apertures on the crown, two larger, vertically offset upper openings and a single smaller lower opening, arranged asymmetrically; and (d) when viewed from above, a radiating, multi-pointed star-shaped plan formed by the draped folds. It is the combination of these features that gives the design its particular look.

5. The Company embodies the [redacted] design in a ghost-light product that it sells to United States consumers, including through Amazon and Temu. The Company has invested substantial time and money designing, tooling, sourcing, marketing, and building goodwill in this product.

6. This is a seasonal product. Nearly all of its annual demand falls in the weeks leading up to Halloween. A sale lost to a copycat in October is not recovered in November; it is lost for the year. The season now underway is the product's primary and, for practical purposes, its only selling window.

7. The Company monitors the Amazon.com and Temu.com marketplaces for products that copy the [redacted] design. Through that monitoring, the Company identified the storefronts and listings set out on Schedule "A" to the Complaint (the "Accused Products"), each offered by a seller operating under an alias.

8. I personally reviewed each of the Accused Products identified on Schedule "A" and compared it to the figures of the [redacted] Patent. Each Accused Product embodies the same domed and draped body, the same scalloped rising-and-falling hem, the same asymmetric three-aperture "face," and the same overall visual impression as the Patented Design. In my judgment, and to the eye of an ordinary purchaser of decorative Halloween lighting, each Accused Product looks like the Company's patented product. The differences, if any, are trivial.

9. The Accused Products are, for purposes of the design, materially identical to one another. They are not variations on a theme; they are the same copied design offered by different sellers. Because they differ from each other only in insignificant details, I have prepared both a representative three-way comparison, setting the [redacted] design against the closest prior art and against the Accused Products, and a per-listing chart confirming, listing by listing, that each Accused Product embodies the Patented Design. Those claim charts are attached as Exhibit A to this Declaration.

10. The distinctive features of the [redacted] design are not found in the prior [redacted]. Earlier designs of this general kind, including those cited during examination of the [redacted] Patent, use a plain or simple hem and a conventional two-eye or featureless face. The [redacted] design departs from them in exactly the features the Accused Products copy: the scalloped, pointed hem and the asymmetric three-aperture face. Viewed against that prior art, the

resemblance between the Accused Products and the [redacted] design is unmistakable and is drawn to the very features that make the design new.

11. Based on the Company's records and my experience in this market, the sellers behind the Accused Products are located in the People's Republic of China or other foreign jurisdictions. They sell under aliases and do not disclose their true names or physical addresses on their storefronts. From the Company's prior enforcement efforts against sellers of this kind, I know that when such sellers learn of a lawsuit they routinely close the targeted storefront, open a new one under a different alias, and move the money out of their marketplace and payment accounts, often offshore, within days or hours.

12. The proceeds of the Accused Products' sales are held, at least in part, in accounts maintained by or through the Amazon and Temu marketplaces and third-party payment processors such as PayPal and Payoneer. Those funds can be transferred out of the United States instantly. If Defendants receive advance notice of this action, I believe they will move those funds beyond the reach of this Court and will resume selling the same product under new aliases, defeating both the Company's ability to collect any judgment and the purpose of any injunction.

13. For these reasons, the Company respectfully asks the Court to grant the requested temporary restraining order, including the restraint of Defendants' assets, the disabling of the Accused Listings, expedited discovery, and authorization to serve Defendants electronically, before Defendants are notified.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on 9/9, 2026.

[redacted]

[redacted]

President, Zhongshan Jializhi Technology Co., Ltd.

**EXHIBIT A**
**CLAIM CHART: U.S. Design Patent No. [redacted]**

**[REDACTED]**