**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**Case No. 1:26-cv-26215-BB**

DOE CORP.,
Plaintiff,
v.
THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"
Defendants.
_____________________________________/

# YZ Defendants' Expedited Motion to Dissolve Temporary Restraining Order and Opposition to Preliminary Injunction

Moving Defendants YanDe Store (No. 1), Joyehome Direct (No. 5), ORIENTAL CHERRY HOME (No. 14), VersaCharm (No. 16), Wantline (No. 18), FestalMart Direct (No. 20), SnowFlood (No. 30), and Giftoday (No. 36) (collectively, "YZ Defendants") move under Federal Rule of Civil Procedure 65(b)(4) and Southern District of Florida Local Rule 7.1(d)(2) to dissolve the temporary restraining order ("TRO") as to them and oppose preliminary injunctive relief on the present record. They request the release of case-related listing and asset restraints, preservation of the Rule 65(c) security, and a prompt ruling. This appearance is limited to interim relief. YZ Defendants expressly preserve their objections concerning personal jurisdiction, service under Rule 12 and joinder under 35 U.S.C. § 299 for a separate, upcoming motion to dismiss on a non-expedited basis.

A ruling by September 30, 2026, or before any extension or preliminary injunction ruling, whichever comes first, is necessary. Rule 65(b)(4) permits an adverse party, on two days' notice or shorter notice set by the Court, to move to dissolve or modify an ex parte TRO, and directs the Court to hear and decide the motion "as promptly as justice requires." Fed. R. Civ. P. 65(b)(4).

The products are seasonal Halloween decorations. Continued restraint during the weeks preceding October 31 cannot be repaired by allowing the listings to resume after the selling season. Ordinary briefing deadlines would leave the sellers without meaningful interim relief.

## INTRODUCTION AND BACKGROUND

The asserted patent claims an ornamental design for a "ghost light" decoration. U.S. Design Patent No. D1,126,458 ("the D'458 patent") was filed August 23, 2024, and issued May 12, 2026. The question on this motion is whether Plaintiff has shown a likelihood that each YZ Defendant's identified product infringes that particular design and that the patent will withstand the identified prior-art challenge.

The answer turns on a comparison Plaintiff cannot avoid. Other defendants have filed a declaration authenticating screenshots of an Amazon listing for ASIN B0C9LNV2J1. The screenshots show four reviews marked "Verified Purchase" dated August 19, 20, and 22, 2023, and customer photographs associated with three reviews dated August 20 and 22. ECF No. 30-1 ¶ 13; ECF No. 30-2, Ex. 10, at 19–21; *see also* Exhibit 2 (Ziqi Yu's capture). Those dates precede August 23, 2023, more than one year before the patent's filing date. The screenshots provide a concrete basis to compare a then-disclosed, fabric-draped ghost light with the patent drawings. Earlier, dated video captures show other illuminated, draped ghost decorations. ECF No. 30-1 ¶¶ 3–6; ECF No. 30-2, Exs. 1–4. In addition, other earlier Amazon listings, ASINs B0D8HVR1GD and B0CHFRX4RS, depict similar ghost light designs and offers additional visual comparators that undermine the D'458 Patent's validity. *See* Exhibit 2 at 4, 6, 12.

Independently, the accused products offered by these eight sellers differ materially in overall appearance from the drawings of the D'458 patent. Exhibit 1 supplies a seller-by-seller, product-by-product threeway comparison. That exhibit is central: a grouping of all "ghost lights" would

obscure the actual ornamental differences. If Plaintiff treats the patent as broad enough to reach those different designs based on features also visible in the earlier decorations, the prior art becomes a more serious obstacle to validity. If Plaintiff distinguishes the earlier decorations by the patent's particular claimed details, those same details also constrain the infringement comparison. Either way, Plaintiff must meet its burden for each moving product.

Plaintiff filed this action in September 2026. The Court initially denied the ex parte applications without prejudice and directed a seller-specific showing at ECF No. 11; the renewed TRO was entered under seal. YZ Defendants and their counsel have not received the complaint's sealed attachments, Plaintiff's claim charts and declarations, or the operative order despite a request to Plaintiff's counsel. This motion therefore relies on the materials currently available and requests prompt access to the sealed record before any further injunction is considered.[1] Despite that, The information available is enough for YZ Defendants move to dissolve the TRO.

**LEGAL STANDARD**

A party restrained without notice may move to dissolve or modify an ex parte TRO on two days' notice, or shorter notice set by the Court, and the Court must hear and decide the motion "as promptly as justice requires." Fed. R. Civ. P. 65(b)(4). A preliminary injunction requires notice and a showing of likelihood of success, likely irreparable injury, favorable equities, and consistency with the public interest. Fed. R. Civ. P. 65(a)(1); *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20, 24 (2008). No patent injunction follows automatically from issuance of a patent. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391–94 (2006).

[1] The Complaint without attachment (ECF No. 1) is available at third-party public databases, and the Schedule A is circulating among some defendants. The current information available is enough for counsel to responsibly move to dissolve the TRO.

On the merits, Plaintiff must show both likely infringement and that the patent is likely to withstand a substantial validity challenge. *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376–79 (Fed. Cir. 2009). The presumption of validity remains, but the accused infringer need not establish invalidity by clear and convincing evidence at this interim stage. Once a supported challenge is raised, the patentee must show that it is more likely than not to prevail over that challenge. *Titan Tire*, 566 F.3d at 1377–79; *see also Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017) ("Vulnerability is the issue at the preliminary injunction stage, while validity is the issue at trial.").This motion asks the Court to assess likelihood, not to enter a final judgment of invalidity.

**ARGUMENT**

**I Plaintiff has not shown a likelihood of success on either validity or infringement**

Plaintiffs cannot satisfy the first preliminary-injunction factor. A patentee seeking preliminary injunctive relief must show that it will likely prove infringement and that the asserted claims will likely withstand validity challenges. *Titan Tire*, 566 F.3d at 1376–79. If the accused infringer raises a substantial question concerning either infringement or validity that the patentee cannot show lacks substantial merit, a preliminary injunction should not issue. *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1350–51 (Fed. Cir. 2001). Plaintiff has not shown a likelihood of success on either validity or infringement.

First, as already discussed by other defendants in ECF No. 30, the prefiling evidence raises a serious novelty question. Under 35 U.S.C. § 102(a)(1), a design disclosed or on sale before its effective filing date can be prior art; even assuming that the prior art comes from Plaintiff (which Plaintiff bears the burden of proof), the one-year exception in § 102(b)(1) cannot rescue a

disclosure made more than one year before filing. The contemporaneous review dates and customer photographs associated with B0C9LNV2J1 place a visually pertinent ghost-light design before the August 23, 2023, critical date. ECF No. 30-1 ¶ 13; ECF No. 30-2, Ex. 10, at 19–21. The four earlier video captures dated 2016, 2021, 2022, and August 10, 2023, further show what was already visible to the public; their precise effect depends on the depicted designs and the patent figures. ECF No. 30-1 ¶¶ 3–6; ECF No. 30-2, Exs. 1–4. In addition, other earlier Amazon listings, ASINs B0D8HVR1GD and B0CHFRX4RS, depict similar ghost light designs and offers additional visual comparators that undermine the D'458 Patent's validity. *See* Exhibit 2 at 4, 6, 12. Though Plaintiff may contest whether the reviews correspond to the same product variant shown in the photographs and whether all claimed features appear in any single disclosure, those are concrete questions to resolve on evidence before imposing continued restraint.

The ordinary-observer standard for design-patent anticipation is the same visual standard used for infringement, although each inquiry compares a different pair of designs. *International Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1239–40 (Fed. Cir. 2009). The earlier, dated designs may also bear on obviousness under the flexible design-patent framework of *LKQ Corp. v. GM Global Technology Operations LLC*, 102 F.4th 1280, 1293–99 (Fed. Cir. 2024) (en banc).

Second, the same art sharpens the noninfringement showing. The ordinary observer asks whether the overall appearance of the accused design is substantially the same as the claimed design, taking account of relevant prior art. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 676–78 (Fed. Cir. 2008) (en banc). Where a patented design and an accused product are not "plainly dissimilar," the court must conduct a threeway analysis comparing the accused product, the patented design, and the prior art. *Egyptian Goddess*, 543 F.3d at 677–78. When the

differences between the claimed and accused design are viewed in light of the prior art, the attention of the hypothetical ordinary observer will be drawn to those aspects of the claimed design that differ from the prior art. *Egyptian Goddess*, 543 F.3d at 676; *see also Lanard Toys Ltd. v. Dolgencorp LLC*, 958 F.3d 1337, 1344 (Fed. Cir. 2020); *ABC Corp. I v. Partnership & Unincorporated Associations Identified on Schedule "A,"* 52 F.4th 934, 942–45 (Fed. Cir. 2022). Exhibit 1 identifies the visual differences for each YZ Defendant's accused product by threeway comparison. Although the D'458 patent bears a striking resemblance to the identified prior art, it differs substantially from the YZ Defendants' accused products. Many of those products lack a "mouth" component, displaying two dots rather than three; have different shaped dots such as round dots rather than the oval dots depicted in the patent; and/or have different shorter, wider, or bat-shaped overall shapes. Exhibit 1 at 2-14.

The resulting dilemma is dispositive at this stage. If Plaintiff argues that the D'458 patent reaches each materially different Exhibit 1 design because it shares a general draped, illuminated ghost appearance, Plaintiff must explain why the earlier designs does not create the same overall impression and undermine novelty. If Plaintiff instead relies on narrower ornamental details to distinguish the patent from that disclosure, it must identify those details in each YZ Defendant's accused product despite the differences documented in Exhibit 1. The Court should make neither inference automatically: the same observer test requires separate, evidence-based comparisons of patent to prior art and patent to each accused product. On the present record, Plaintiff has not established the likelihood of success needed to restrain these sellers.

**II The present record does not establish irreparable harm from these products**

The existence of a patent and the approach of Halloween do not themselves prove irreparable injury to Plaintiff. A design-patent movant must connect the injury asserted to the accused

ornamental design. *Apple Inc. v. Samsung Electronics Co.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012). The accessible record does not identify any objective facts, such as lost customers, price effect, or goodwill injury attributable to any YZ Defendant's claimed use of the patented ornamentation by selling the accused product, or explain why a seller-specific monetary remedy would be inadequate.

Additionally, delay in bringing an infringement action and seeking a preliminary injunction are factors that could suggest that the patentee is not irreparably harmed by the infringement. *Apple, Inc.,* 678 F.3d at 1325. Plaintiff waited four months after the D'458 Patent's issuance to sue, which undermines imminent injury and justifies dissolution of the ex parte TRO.

**III The equities and public interest favor dissolving these restraints**

A listing restraint during the short Halloween selling period threatens sales that cannot simply be shifted to November. Freezing an entire seller account can also affect transactions unrelated to the accused articles. The seasonal timing warrants prompt judicial review now. Plaintiff retains its ability to seek damages and, on a proper evidentiary showing, appropriately tailored prospective relief.

The public also has an interest both in protection of valid design rights and in access to competing products whose ornamental appearance is materially different or drawn from the public domain. Maintaining the TRO here harms public interest.

**IV The asset restraint and security require separate scrutiny**

An asset freeze is not an automatic consequence of alleging design-patent infringement. If a restraint serves only to secure an unliquidated claim for money, *Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 333 (1999), limits the Court's equitable authority.

Plaintiff should identify the legal basis for its requested restraint, the remedy it seeks, and a nexus between frozen amounts and sales of each specifically accused listing. At a minimum, funds traceable to unrelated listings or unrelated transactions should be released. Section 289 may provide a design-patent profits remedy if its requirements are established; it does not itself establish a right to freeze an entire account without a tailored showing, especially when Plaintiff has not shown that it has satisfied the marking requirement under Section 287.

Rule 65(c) requires security in an amount the Court considers proper for costs and damages incurred by a party later found wrongfully restrained. There is only a $5,000 aggregate bond for 49 originally listed defendants, which is about $100 for each defendant. That figure is not enough to cover even one sellers' potential losses during the crucial seasonal selling period. Should any restraint remains, the Court should reconsider security on a seller-specific evidentiary record and require an appropriate adjustment. It should retain the existing security until the affected defendants have a reasonable opportunity to assert any wrongful-restraint claim. Fed. R. Civ. P. 65(c); Piambino v. Bailey, 757 F.2d 1112, 1143–44 (11th Cir. 1985).

**V Access to the operative record and seller-specific process are necessary**

The sealed complaint attachments, infringement evidence, and operative TRO must be unsealed or at least supplied to appearing counsel sufficiently before any preliminary-injunction hearing to permit an informed response. Rule 65(a)(1) requires notice of a preliminary injunction, and Rule 65(b)(3) directs a hearing at the earliest possible time after an ex parte TRO. Plaintiff should also identify the grounds for personal jurisdiction and the steps taken to verify each seller's physical address, as the Court required in ECF No. 11. A nationally accessible listing, without seller-specific evidence, does not itself resolve jurisdictional questions. YZ Defendants reserve personal jurisdiction objections.

YZ Defendants further reserve service objections. Where transmission for service to a known Chinese address is required, the Hague Service Convention applies, and the Second and Seventh Circuits have held that it does not permit email service in China. Smart Study Co. v. Shenzhenshixindajixieyouxiangongsi, 164 F.4th 164, 170–72 (2d Cir. 2025); Kangol LLC v. Hangzhou Chuanyue Silk Import & Export Co., No. 25-2205, slip op. at 9–11 (7th Cir. May 29, 2026). Each moving seller is domiciled in mainland China, as publicly displayed in their seller profile. Amazon collects, verifies, and publishes these addresses. A publicly displayed address, though not being conclusive proof of domicile, is at least a lead for reasonable verification. If valid Chinese addresses were known after diligence, service transmitted to China falls within the Hague Service Convention. These questions reinforce the need for access and a prompt hearing; they are reserved for a separate Rule 12 motion for full briefing rather than presented for final determination here.

**RELIEF REQUESTED**

YZ Defendants respectfully request that the Court

(1) set an expedited response deadline and resolve this motion by September 30, 2026, and before or together with any request to extend or convert the TRO;

(2) dissolve the TRO, including listing and asset restraints, as to the eight YZ Defendants;

(3) direct Plaintiff promptly to notify Amazon and every other recipient of the restraint to lift measures attributable to this action as to them, with a copy to moving counsel and a notice of compliance filed with the Court;

(4) decline a preliminary injunction against them on the present record;

(5) retain existing security pending further order;

(6) modify ECF No. 9 and any related order to unseal the complaint, the TRO motion and TRO, all relevant attachments, and any later PI/extension papers and orders;

(7) terminate the pseudonym upon finding that no exceptional continuing circumstances justify it, and direct the Clerk to correct the public caption; and

(8) grant such further relief as is just.

**REQUEST FOR REMOTE HEARING**

YZ Defendants believe that the Court may decide the motion on the papers. If a hearing is needed, pursuant to S.D. Fla. L.R. 7.1(b)(2), YZ Defendants request a **remote** hearing by Zoom or the Court's approved video platform. Counsel expects to participate from China. A remote hearing permits prompt participation by counsel for several defendant groups.

**CERTIFICATE OF GOOD FAITH CONFERENCE**

A motion for injunctive relief is excepted from the prefiling conference requirement of S.D. Fla. L.R. 7.1(a). Nevertheless, undersigned counsel emailed and called Plaintiff's counsel, Cole Y. Carlson, Esq., on September 24, 2026, at approximately 11:31 a.m. Eastern Time about dissolution of TRO and access to the sealed papers. Mr. Carlson acknowledged receiving the email but did not then provide a substantive position.

Dated: September 25, 2026

Respectfully submitted,

/s/ Ziqi Yu
Ziqi Yu
Fla. Bar ID #1044119
procollider@pm.me
5794 Bird Rd Unit 554
Miami, FL 33155
415-519-5274

Zhaoxin Zhang, Esq.
(pro hac vice motion pending)
T&C Lawfirm
34F Kangtai Innovation Tower
Nanshan District, Shenzhen
Guangdong Province, China
Tel: +86-15652520869
Email: zhangzhaoxin@tclawfirm.com

Counsel for YanDe Store (No. 1), Joyehome Direct (No. 5), ORIENTAL CHERRY HOME (No. 14), VersaCharm (No. 16), Wantline (No. 18), FestalMart Direct (No. 20), SnowFlood (No. 30), and Giftoday (No. 36) ("YZ Defendants")

**CERTIFICATE OF SERVICE**

I certify that on September 25, 2026, I filed this document through CM/ECF, which will serve all registered counsel who receive electronic notice.

/s/ Ziqi Yu

Ziqi Yu