UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO. 1:26-cv-26215-BLOOM/Elfenbein

ZHONGSHAN JIALIZHI TECHNOLOGY CO., LTD.,

Plaintiff,

v.

THE INDIVIDUALS, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"

Defendants.
_______________________________________/

**PLAINTIFF'S RESPONSE IN OPPOSITION TO REPRESENTED DEFENDANTS' EXPEDITED MOTION TO DISSOLVE TEMPORARY RESTRAINING ORDER, OPPOSITION TO ENTRY OF PRELIMINARY INJUNCTION, AND ALTERNATIVE MOTION TO INCREASE BOND AND EXPEDITE PRELIMINARY INJUNCTION HEARING**

Plaintiff Zhongshan Jializhi Technology Co., Ltd. ("Plaintiff"), pursuant to the Court's Paperless Order of September 25, 2026, ECF No. [35], responds in opposition to the Expedited Motion to Dissolve Temporary Restraining Order filed by the defendants identified on Schedule "A" as Nos. 3, 4, 7, 8, 9, 11, 12, 15, 19, 25, 31, 32, 35, 37, 38, 39, 44, 46, 47, and 48 (the "Represented Defendants") ECF No. [30] (the "Motion"). The Motion should be denied.

**INTRODUCTION**

The Motion rests on one Amazon listing and a handful of craft videos. Neither carries the weight the Represented Defendants put on it.

The listing, ASIN B0C9LNV2J1, is offered as proof that the patented design was already on the market. It shows something else: that a white, draped ghost with two oval eyes and an oval mouth was on the market. Plaintiff does not dispute that, and it does not claim that idea. The D'458

Patent claims a particular appearance: a tall, slender ghost that falls in long, nearly vertical folds from a domed crown to a hem ending in distinct pointed tips that hang free above the ground. The ghost on ASIN B0C9LNV2J1 is a broad bell whose fabric spreads out and pools on the ground. The Represented Defendants reach “anticipation” only by recasting the patent as “a white fabric drape over a vertical support with a rounded head.” That describes every bedsheet ghost ever made. It does not describe the claimed design, and the Federal Circuit has warned courts for nearly two decades against deciding design patent cases at that level of abstraction.

The rest of the Motion is a set of promises. The Represented Defendants say they “will show,” in a sealed filing not yet made, that accused listings sell the 2023 product. They say the seller’s sales records “will show” first-sale dates. They say each of them “will file” a declaration quantifying its harm, and they refer to a “concurrently filed” motion to dismiss. As of this filing, none of those papers is on the docket. A motion to dissolve injunctive relief is decided on evidence. The Represented Defendants have offered very little, and what they have offered does not show the claimed design.

## BACKGROUND

United States Design Patent No. D1,126,458 (the “D’458 Patent”) issued on May 12, 2026, from an application filed August 23, 2024. ECF No. [1] at ¶ 11. It claims the ornamental design for a ghost light as shown in seven figures. The claimed ghost is tall and slender. Its body falls in long, nearly vertical folds from a domed crown, widening only slightly toward the bottom, to a hem that ends in a series of distinct pointed tips hanging free above the ground. Two oval eye pieces and a single elongated oval mouth piece sit on the surface of the crown. D’458 Patent, Figs. 1-7.

Mr. Chen, Plaintiff's President and the named inventor, began sketching the design at the end of 2023. Supplemental Declaration of Jianan Chen ("Supp. Chen Decl.") ¶ 2. Plaintiff made its first samples in April 2024, received its first order on April 30, 2024, and shipped its first production units on June 15, 2024. *Id.* ¶¶ 4-5 & Exs. 1-2. The product was first listed on Amazon on July 20, 2024, and customers were buying it there no later than August 3, 2024. *Id.* ¶ 6 & Ex. 3. Each of those events came within the one year before Plaintiff filed its application. *Id.* ¶ 7.

Plaintiff filed suit on September 9, 2026, four months after the patent issued. The Court's Omnibus Order required a defendant-by-defendant showing of personal jurisdiction, of each injunction factor, and of the efforts made to verify each defendant's address. ECF No. [11]. Plaintiff renewed its motions with that showing, including product-by-product claim charts comparing each accused product to the figures of the D'458 Patent. ECF No. [13-1] (Declaration of Jianan Chen ("Chen Decl."), and the Court entered the Temporary Restraining Order under seal ECF No. [20] (the "TRO"). Plaintiff posted bond on September 19, 2026 ECF No. [21], and served the Complaint, Schedule "A," the TRO motion, the TRO, and all related papers on every defendant and on all appearing counsel on September 25, 2026. ECF No. [37].

Four of the twenty Represented Defendants, Nos. 4, 11 15, and 19, have settled. The Court dismissed them with prejudice and released their restrained funds on September 24 and 29, 2026. [ECF Nos. 34, 46.] The Motion is moot as to them.

Plaintiff has also narrowed the relief it seeks. Its Motion for Preliminary Injunction, filed today, is directed only at defendants whose accused products are draped ghost figures of the kind the D'458 Patent claims. [ECF No. 49.] Plaintiff does not seek a preliminary injunction against, and does not oppose dissolution of the TRO as to, Represented Defendant Nos. 9, 31, 32, 35, 39,

47, and 48, whose accused listings offer ghost string lights, swing ghosts, and similar products.[1] This response therefore addresses the remaining nine Represented Defendants: Nos. 3, 7, 8, 12, 25, 37, 38, 44, and 46.

**LEGAL STANDARD**

Plaintiff accepts that it bears the burden on each injunction factor. On likelihood of success, where an accused infringer challenges validity, the question is not whether the challenger has pointed to something that looks similar. The Court, "after considering all the evidence available at this early stage of the litigation, must determine whether it is more likely than not that the challenger will be able to prove at trial, by clear and convincing evidence, that the patent is invalid." *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1379 (Fed. Cir. 2009). The patentee need not prove validity; it "must show that the alleged infringer's defense lacks substantial merit." *Id.* at 1377 (emphasis omitted) (quoting *New England Braiding Co. v. A.W. Chesterton Co.*, 970 F.2d 878, 883 (Fed. Cir. 1992)). Absent a supported challenge, the statutory presumption of validity "is sufficient to establish a likelihood of success on the validity issue." *Tinnus Enters., LLC v. Telebrands Corp.*, 846 F.3d 1190, 1205 (Fed. Cir. 2017); see 35 U.S.C. § 282(a).

At this stage the Court may consider affidavits and materials that would not be admissible at trial, "if the evidence is 'appropriate given the character and objectives of the injunctive proceeding.'" *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995). That rule governs what the Court may consider, not what the material is worth. "While evidence

[1] Plaintiff believes that these storefronts still infringe but does not believe it can currently meet the preliminary injunction standard for these storefronts based on the representations made in ECF No. 30. Further discovery is necessary to determine whether the alleged products can meet the ordinary observer test in light of the prior art disclosed.

need not be admissible under the Federal Rules of Evidence, the Rules are still relevant as far as how the Court assigns weight and credibility." *DBEST Prods., Inc. v. Dongguan Xianghuo Trading Co.*, No. 2:25-cv-04573-MWC-JC, 2025 WL 3050090, at *6 (C.D. Cal. Sept. 15, 2025). Plaintiff does not ask the Court to exclude the Represented Defendants' screen captures. It asks the Court to read them and to weigh them for what they are: unauthenticated images from third parties that have not been confirmed to have been sold on the date they represent.

## ARGUMENT

### I. THE REPRESENTED DEFENDANTS HAVE NOT RAISED A SUBSTANTIAL QUESTION OF VALIDITY.

#### A. The Represented Defendants' best reference, ASIN B0C9LNV2J1, does not look like the claimed design.

Plaintiff does not claim the idea of a sheet ghost with a face. A lighted, fabric-draped ghost with two oval eyes and an oval mouth was on the market before Mr. Chen began his design at the end of 2023, and Plaintiff does not contend otherwise. Supp. Chen Decl. ¶¶ 2, 9. A design patent does not protect an idea. It protects the particular appearance shown in its figures, and anticipation turns on whether an ordinary observer would find a prior design substantially the same in overall appearance as the claimed one. *Int'l Seaway Trading Corp. v. Walgreens Corp.*, 589 F.3d 1233, 1240 (Fed. Cir. 2009). Courts must guard against "the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole." *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679-80 (Fed. Cir. 2008) (*en banc*). The Motion does exactly that. It strips the D'458 Patent down to "a white fabric drape over a vertical support with a rounded head, with oval eye and mouth features" ECF No. [30] at 6, which is the shared idea, and then declares that the prior product matches that sentence. The claimed design is not a sentence. It is the seven figures, and the Motion never compares a single one of them to a single image of the prior product.

When that comparison is made, the two designs part ways where it counts. Even taking the current listing images as an accurate picture of what was sold in 2023, which the Represented Defendants have not established, the ghost on ASIN B0C9LNV2J1 widens from its head into a broad bell whose fabric spreads out and pools on the ground. ECF No. [32-2] at 8; Supp. Chen Decl. ¶ 10 & Ex. 4. The claimed ghost is a different shape. It is tall and slender, falling in long, nearly vertical folds from a domed crown and widening only slightly, to a hem that ends in distinct pointed tips hanging free above the ground. D'458 Patent, Figs. 1-7; Supp. Chen Decl. ¶ 10 & Ex. 4. The face is the element the two share, and it is the element the prior art already had. Under *Egyptian Goddess*, an observer familiar with the prior art is drawn to the features of the claimed design that differ from it. 543 F.3d at 678. Here the principal difference is the silhouette: a tall, slender figure whose drape falls in long, vertical folds, rather than a broad bell whose fabric spreads into a wide skirt. The hem contributes to that difference, but the proportions drive it.

The Represented Defendants spend much of their argument on the August 2023 dates of the reviews, measured against the one-year grace period. The dates decide nothing. Plaintiff began its design at the end of 2023 and first sold it in 2024. Supp. Chen Decl. ¶¶ 2-7. A third party's product sold publicly before then is prior art under 35 U.S.C. § 102(a)(1) whether it was sold in August 2023 or in November 2023. Plaintiff does not rest on the calendar. It rests on the comparison.

The comparison must also be made against the product as it actually existed before the filing date, and the Represented Defendants carry the burden of showing what that was. Their evidence is thin. A seller can change a listing's title, images, and description at any time, and reviews stay attached to the ASIN. The current page for ASIN B0C9LNV2J1 advertises a "2 Pack Lighted Halloween Ghosts" sold by a DAZONGE storefront with an adjustable pole "between 3

ft and 5 ft" and "layered white fabric." ECF No. [32-2] at 8. Courts reviewing this kind of evidence have refused to infer a product's earlier appearance from its current Amazon page. In *DBEST*, the challenger's screenshots showed launch dates that preceded the priority date, but the challenger "ha[d] not established that the product being sold or advertised on the page now is the same as what was sold on the launch date, or when the products were reviewed." 2025 WL 3050090, at *6.* There, the court noted that the challenger's own witness conceded that reviews on a listing can cover different models, and it held that the challenger had not shown that the prior art favored a finding of invalidity. *Id.*

*Topfire* is closer still. There, as here, the challenger's only evidence of a pre-filing sale was a declaration of counsel attaching Amazon screenshots of a listing and a customer review with photographs. *Topfire Ltd. v. Cook*, No. 2:23-cv-02503-DAD-JDP, ECF No. [80] at 18-19 (E.D. Cal. Sept. 22, 2026). The court recognized that the challenger was "relying upon the out-of-court statements made by the reviewer that they purchased the product, that this purchase occurred in 2019, and that the photographs contained in the review are of that product." *Id.* at 21. It held that the review's date stamp had not been authenticated as a reliable machine record. *Id.* at 21 n.12. And it concluded that, even considered, "a blurry photo from an Amazon reviewer, taken by an unknown declarant, at an unknown time" was "not clear and convincing evidence" that the earlier product was the same as the later one. *Id.* at 21 n.13. *Topfire* was decided on summary judgment, and Plaintiff does not contend that the trial rules of evidence bind the Court here. But *Titan Tire* asks whether the Represented Defendants are likely to prove invalidity by clear and convincing evidence at trial. 566 F.3d at 1379. *Topfire* shows what that trial record looks like when this is all a challenger has. *See also LKRB Indus., LLC v. xuzhouaiyaxundianzishangwuyouxiangongsi*, No. 2:24-cv-01601-WSS, ECF No. [178] at 43-44 (W.D. Pa. Feb. 18, 2025) (declining to rest

preliminary relief on Amazon reviews that "did not come in the form of a sworn affidavit," where "[i]t is unclear how Amazon online marketplace reviews could be presented at trial in an admissible format"). Mr. Kaushik authenticates only what appeared on his screen in New Jersey on September 24, 2026. ECF No. [30-1] ¶¶ 1-2. He does not claim to know what was sold in 2023, and he does not say what any photograph shows. No reviewer has given a declaration.

The Represented Defendants try to close the gap with a promise. They say they "will show," in a sealed supplemental filing, "that listings Plaintiff itself accused on Schedule 'A' offer this same product." ECF No. [30] at 4, 6. That filing has not been made. If it is made, Plaintiff requests leave to respond to it. No defendant is identified on Schedule "A" by ASIN B0C9LNV2J1. The DAZONGE storefront that now sells under that ASIN is operated by Defendant No. 11, which has been dismissed. ECF No. [47]. Each accused product on which Plaintiff seeks preliminary relief is a tall, slender draped figure, not the broad bell of ASIN B0C9LNV2J1. A defendant-specific theory, even if later supported, would be a reason to revisit the restraint as to that defendant. It is not a reason to dissolve it as to all of them.

**B. The craft videos and current retail pages neither anticipate the design nor render it obvious.**

The videos fare no better. They are do-it-yourself tutorials for homemade decorations assembled from a garden tomato cage, a tablecloth, string lights, and, in the oldest of them, a "free printable ghost face image." ECF No. [30-2] at 2, 6. Another shows "floating ghosts" meant to hang from a ceiling. *Id.* at 4. Each exhibit is a single frame, whatever frame happened to be "displayed in the player at the time of capture." ECF No. [30-1] ¶ 2. One frame of a craft video does not disclose the overall appearance of a three-dimensional design claimed in seven views. The Motion again offers no side-by-side comparison, only counsel's statement that each video shows "a ghost formed by fabric draped over an internal frame, with a rounded head and oval-

shaped eye and mouth features." ECF No. [30] at 7. That is the shared idea again, applied to different objects. A tablecloth thrown over a tomato cage takes the shape of the cage and the cloth, not the tall, slender form and pointed hem of the claimed design.

The "Time on Our Hands" video has a further problem. It is marked "Unlisted." ECF No. [30-1] ¶ 7. An unlisted video cannot be found by search; it is available only to someone who already has the link. A reference is publicly accessible only if it "was 'disseminated or otherwise made available to the extent that persons interested and ordinarily skilled in the subject matter or art exercising reasonable diligence, can locate it.'" *Blue Calypso, LLC v. Groupon, Inc.*, 815 F.3d 1331, 1348 (Fed. Cir. 2016) (quoting *Kyocera Wireless Corp. v. Int'l Trade Comm'n*, 545 F.3d 1340, 1350 (Fed. Cir. 2008)). The Represented Defendants offer no evidence of when the video became unlisted, who saw it, or how anyone could have found it.

The retail pages are not prior art on this record at all. The Pottery Barn and Grandin Road exhibits are captures of product pages as they appeared on September 24, 2026. ECF No. [30-1] ¶¶ 10-11. Neither says when those products were first sold. The JOYIN listing (ASIN B097Z2V5KN) is for hanging ghosts wearing witch's hats with arms and hands a customer can pose. ECF No. [30-2] at 18. It is a different article with a different appearance.

The obviousness argument is a single paragraph. ECF No. [30] at 7. *LKQ Corp. v. GM Global Technology Operations LLC*, 102 F.4th 1280 (Fed. Cir. 2024) (*en banc*), relaxed the *Rosen* and *Durling* requirements. It did not dispense with evidence. The inquiry still "compare[s] the visual appearance of the claimed design with prior art designs," *id.* at 1298, and the challenger must identify a primary reference and show "some record-supported reason (without hindsight) that an ordinary designer in the field of the article of manufacture would have modified the primary reference with the feature(s) from the secondary reference(s) to create the same overall appearance

as the claimed design," *id.* at 1298-99. If any reference is the natural starting point, it is ASIN B0C9LNV2J1. The Motion does not say what an ordinary designer would have taken from which other reference to turn that broad, pooled bell into a tall, slender figure with a pointed, free-hanging hem, or why the designer would have done it. Its only support is counsel's assertion that a designer "needed no inventive step to arrive at a sheet-draped ghost on a support with oval eyes and mouth." ECF No. [30] at 7. Plaintiff agrees that a sheet-draped ghost with oval eyes and mouth was not new. That is not the claimed design, and saying so is hindsight stated as a conclusion.

*LKQ* brought design patent obviousness under the *Graham* framework, and a challenger who invokes *Graham* has to supply the *Graham* facts. In *LKRB*, accused infringers argued that a patent was "very likely invalid as anticipated and/or being obvious" over three prior art references. ECF No. [178] at 33. The court held that they had not raised a substantial question of validity, because they "did not define who 'a person of ordinary skill in the art' is," offered no evidence on secondary considerations, and bore "the burden of raising a substantial question as to the validity" of the patent. *Id.* at 33-34. The same is true here. The Represented Defendants do not identify the ordinary designer of Halloween decorations, describe that designer's skill, or address any objective indicia. On that record, the Court cannot conduct the *Graham* inquiry, and the Represented Defendants have not carried their burden to raise a substantial question.

**C. New art does not lower the standard, and this art does not show the design.**

The Represented Defendants invoke *Microsoft Corp. v. i4i Ltd. Partnership*, 564 U.S. 91 (2011), for the point that art the examiner never saw may carry more weight. It may. *Id.* at 111. But *i4i* held that invalidity must be proved by clear and convincing evidence regardless, *id.* at 95, and *Titan Tire* asks whether the challenger is likely to carry that burden at trial. 566 F.3d at 1379. New art is only as strong as what it shows. Art that shows the familiar draped ghost and face, but not the claimed proportions and pointed hem, does not become stronger because it is new.

### D. The "crowded field" argument supports infringement, not dissolution.

Plaintiff agrees that the field is crowded. That is why the comparison has to be made at the level of the claimed design's actual appearance. When the prior art is crowded, "differences . . . that might not be noticeable in the abstract can become significant to the hypothetical ordinary observer who is conversant with the prior art." *Egyptian Goddess*, 543 F.3d at 678. A crowded field focuses the scope of a design patent on what distinguishes it. It does not erase that scope.

The Represented Defendants argue that the prior art narrows the D'458 Patent so much that none of their products infringes, but they do not identify a single one of their products, much less compare it to the patent and the prior art. An accused infringer who relies on comparison prior art bears the burden of producing it, *id.*, and a noninfringement argument that never mentions the accused products is not a noninfringement argument. The charge that Plaintiff "made no defendant-specific showing," ECF No. [30], at 8 is simply wrong. Plaintiff filed product-by-product claim charts for every defendant ECF No. [13-1], and the Court entered the TRO only after its Omnibus Order required exactly that showing. ECF Nos. [11, 20]. Plaintiff has since compared each product again, against both the patent and ASIN B0C9LNV2J1, and seeks preliminary relief only as to the products that share the claimed design's tall, slender silhouette and long vertical fall of the drape. PI Chen Decl. ¶¶ 4-7 & Ex. A-1. A product that copies the features the prior art lacks infringes, however crowded the field.

## II. PLAINTIFF WILL BE IRREPARABLY HARMED ABSENT RELIEF.

### A. There was no disqualifying delay.

Plaintiff could not sue before May 12, 2026, and the Federal Circuit has held that a patentee should not be faulted for failing to act before its patent issued. *Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1325 (Fed. Cir. 2012). The Represented Defendants' claim that Plaintiff "tolerated" the 2023 listing "in the marketplace for three years," ECF No. [30] at 9, therefore proves nothing.

Plaintiff had no right to exclude anyone until May 2026, and the 2023 listing is not an accused product.

What remains is four months between issuance and suit. Delay "is but one factor to be considered by a district court in its analysis of irreparable harm," and it "does not preclude, as a matter of law, a determination of irreparable harm." *Hybritech Inc. v. Abbott Labs.*, 849 F.2d 1446, 1457 (Fed. Cir. 1988). Those four months were spent building the record this Court requires in every Schedule "A" case: identifying forty-nine sellers across two marketplaces, making test purchases shipped into this District, compiling per-defendant claim charts, and verifying jurisdiction and addresses for each defendant. ECF No. [11] ¶ 1(b)-(d); ECF No. [13-2] (Carlson Decl.). Plaintiff then moved for a TRO the day after it filed. The cases on delay are nothing like this. *Wreal, LLC v. Amazon.com, Inc.*, 840 F.3d 1244, 1248-49 (11th Cir. 2016), involved an unexplained five-month delay after the complaint was filed, supported only by evidence the plaintiff already had. *High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1556-57 (Fed. Cir. 1995), involved seventeen months of unexplained delay by a patentee that did not make or sell the product at all.

The Represented Defendants' real complaint is timing. They say Plaintiff sued "knowing that the defendants and the accused product would reach peak sales around the Halloween holiday." ECF No. [30] at 2. That is true, and it is the point. A seasonal product earns its year in six weeks. A patent owner who waits until November to enforce against Halloween decorations has no remedy worth having. Seeking relief before the season is diligence, not strategy.

### B. The harm is real, tied to the design, and not compensable by money from these defendants.

Plaintiff's ghost light embodying the D'458 design has been sold on Amazon since July 20, 2024, through a customer that buys the product from Plaintiff and resells it under the Betrihyes

brand. Supp. Chen Decl. ¶ 6 & Ex. 3; ECF No. [1] ¶¶ 16, 22. Every accused sale on the same marketplace, in the same category, to the same customers, is a sale that listing does not make and a reorder Plaintiff does not receive. Demand is concentrated in the weeks before Halloween, and sales lost to infringers in that window are lost for the year. ECF No. [1] at ¶ 17. Direct competition, lost market share and access to customers, and a defendant's inability to satisfy a judgment are the recognized indicia of irreparable harm. *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1151, 1155 (Fed. Cir. 2011) (permanent injunction). The causal nexus requirement is satisfied for the same reason. *Apple*, 678 F.3d at 1324. These are decorative lights. A customer buys one for how it looks, and the ornamental design is how it looks.

The Represented Defendants argue that platform records make any loss calculable. ECF No. [30] at 9. Calculation was never the problem. Collection is. The defendants are anonymous foreign sellers who operate behind storefront aliases and hold their proceeds in marketplace and payment accounts that can be moved offshore in minutes. ECF No. [1] at ¶¶ 2, 9-10, 21, 23. A court "should assess whether a damage remedy is a meaningful one in light of the financial condition of the infringer before the alternative of money damages can be deemed adequate." *Bosch*, 659 F.3d at 1155. A damages figure that can be computed but never collected is not an adequate remedy at law.

## III. THE BALANCE OF HARDSHIPS AND THE PUBLIC INTEREST FAVOR KEEPING THE TRO IN PLACE.

The only hardship the Represented Defendants identify is the loss of sales of the accused products during the season. "One who elects to build a business on a product found to infringe cannot be heard to complain if an injunction against continuing infringement destroys the business so elected." *Windsurfing Int'l, Inc. v. AMF, Inc.*, 782 F.2d 995, 1003 n.12 (Fed. Cir. 1986). The TRO reaches only the accused listings and colorable imitations. ECF No. [20] ¶ 1(a)-(b). Every

Represented Defendant remains free to sell any other Halloween decoration it likes. None has filed any evidence of what the restraint has cost it. The public interest favors enforcing a patent that is presumed valid, 35 U.S.C. § 282(a), against products that copy it.

## IV. THE ASSET RESTRAINT IS ALREADY LIMITED TO THE PROFITS OF THE ACCUSED SALES.

The Represented Defendants ask the Court to limit the asset restraint "to the revenue attributable solely to the accused listings." ECF No. [30] at 10. The TRO already does that. It restrains funds only "up to" the total profits reasonably attributable to infringing sales, expressly leaves any excess unrestrained, and permits any restrained party to move to modify. ECF No. [20] ¶ 1(c). Not one Represented Defendant has submitted an account balance, a sales figure, or any other evidence that its restrained funds exceed its profits from the accused listings.

*Grupo Mexicano de Desarrollo, S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308 (1999), does not require more. It bars a pre-judgment freeze to secure a claim for money damages, *id.* at 333, and it expressly distinguishes suits that seek equitable relief, *id.* at 324-25 (distinguishing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Plaintiff seeks an accounting and disgorgement of each defendant's profits under 35 U.S.C. § 289 and a constructive trust over the proceeds of the infringing sales. ECF No. [1] at ¶ 28 & Prayer ¶ C. "A request for equitable relief invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss*, 51 F.3d at 987. This Court and others in this District have entered asset restraints on that basis in design patent cases against Schedule "A" sellers. *See XYZ Corp. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 23-cv-24366-BLOOM/Torres, ECF No. 30 (S.D. Fla. Jan. 30, 2024); *The Kyjen Co. v. Individuals, P'ships & Unincorporated Ass'ns Identified on Schedule "A,"* No. 24-cv-23973-DPG, ECF No. [30] (S.D. Fla. Dec. 6, 2024). The restraint here is narrower

than many of those, because it is capped at attributable profits by its terms. That cap is exactly where courts that have narrowed Schedule "A" freezes have landed. *See LKRB*, ECF No. [178] at 39 n.2 (recognizing, under *Grupo Mexicano*, the authority to restrain assets with a "close nexus" to the court's equitable powers and limiting the freeze to "all funds allegedly arising from the sale of the allegedly infringing products").

## V. THE BOND SHOULD NOT BE INCREASED ON THIS RECORD.

"[T]he amount of security required by the rule is a matter within the discretion of the trial court . . . [, and] the court may elect to require no security at all." *BellSouth Telecomms., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005) (quoting *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. Unit B 1981)). The Court set the bond at $5,000 after reviewing the full record. ECF No. [20] at ¶ 1(e). The Represented Defendants ask for $5,000 per defendant, or $245,000, without a single fact about what any of them has lost. They say the figure should be "fixed on the declarations they will file by September 30, 2026." ECF No. [30] at 10. Those declarations do not exist yet. Four defendants, including three Represented Defendants, have already settled and had their funds released. ECF Nos. [25, 34]. If the Court concludes, on evidence, that additional security is warranted as to any particular defendant, Plaintiff asks that the Court fix an amount tied to that evidence and allow Plaintiff seven days to post it before any part of the TRO is dissolved.

## VI. PLAINTIFF AGREES TO A PROMPT HEARING AND ASKS THAT THE TRO BE EXTENDED UNTIL THE PRELIMINARY INJUNCTION IS DECIDED.

Plaintiff does not oppose a prompt preliminary injunction hearing and welcomes one. Plaintiff has filed its Motion for Preliminary Injunction concurrently with this response, separately, as the Omnibus Order directs. ECF No. [49]; ECF No. [11] ¶ 1(a). Because the TRO took effect when Plaintiff posted bond on September 19, 2026, ECF No. [20] at ¶ 1(f); ECF No. [21], it will

expire on October 3, 2026, unless extended. Good cause exists to extend it under Rule 65(b)(2) until the Court rules on the preliminary injunction. The Represented Defendants have told the Court they will file new evidence on September 30, 2026, three days before expiration. Plaintiff is entitled to answer it, and the Court should decide the preliminary injunction on a complete record. Letting the TRO lapse in the meantime would allow the very dissipation of funds and resumption of sales the TRO was entered to prevent. The Represented Defendants' refusal to consent does not defeat good cause. Rule 65(b)(2) permits extension "for good cause" or by consent.

Plaintiff opposes the remaining procedural requests. No order compelling Plaintiff to produce its conception and first-sale records three days before the hearing is necessary. Plaintiff has already provided it. Mr. Chen's supplemental declaration sets out the design's development beginning at the end of 2023, Plaintiff's first order on April 30, 2024, its first shipment on June 15, 2024, and the product's first Amazon listing on July 20, 2024, with the underlying records. Supp. Chen Decl. ¶¶ 2-7 & Exs. 1-3. Each of those events falls within the year before the August 23, 2024 filing date, so none is prior art against Plaintiff. 35 U.S.C. § 102(b)(1)(A). Bifurcation of discovery and an early validity schedule are matters for the Rule 26(f) conference and the Court's scheduling order, not for a TRO motion filed before any defendant has answered.

**CONCLUSION**

Plaintiff respectfully requests that the Court (1) deny the Motion as moot as to Defendant Nos. 4, 11, 15, and 19; (2) grant the Motion, without opposition, as to Defendant Nos. 9, 31, 32, 35, 39, 47, and 48; (3) deny the Motion as to Defendant Nos. 3, 7, 8, 12, 25, 37, 38, 44, and 46; (4) decline to increase the bond on the present record; (5) extend the TRO for good cause under Rule 65(b)(2), as to those nine defendants, through the Court's ruling on Plaintiff's motion for preliminary injunction; (6) set the preliminary injunction hearing at the Court's earliest

convenience; and (7) grant Plaintiff leave to respond to any supplemental evidence the Represented Defendants file.

Dated: September 29, 2026

Respectfully submitted,

/s/ Cole Carlson
Cole Carlson
LEAD TRIAL COUNSEL
Florida Bar No. 112863
CARLSON IP LAW, LLC
412 E Madison Street, Suite 821
Tampa, Florida 33602
Tel: (813) 445-5175
cole@carlsoniplaw.com

*Counsel for Plaintiff*

**CERTIFICATE OF SERVICE**

I hereby certify that on September 29, 2026, I electronically filed the foregoing with the Clerk of Court using CM/ECF, which will serve all counsel of record, and that I served a copy by e-mail on all unrepresented Defendants in the manner authorized by the Court's Order ECF No. [20] at ¶ 2.

/s/ Cole Carlson

Cole Carlson